

**NUMBER 13-24-00572-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI – EDINBURG**

NATHAN WAIDE KIMBROUGH, Appellant,

**v.**

THE STATE OF TEXAS, Appellee.

**ON APPEAL FROM THE 377TH DISTRICT COURT
OF VICTORIA COUNTY, TEXAS**

**MEMORANDUM OPINION**

**Before Justices Peña, West, and Fonseca
Memorandum Opinion by Justice West**

Appellant Nathan Waide Kimbrough challenges his conviction for continuous child sexual abuse, a first-degree felony. *See* TEX. PENAL CODE § 21.02(b), (h). By his sole issue, appellant argues the trial court abused its discretion when it allowed the State to admit evidence that appellant possessed child pornography because the evidence was

unfairly prejudicial and substantially outweighed any probative value under Texas Rule of Evidence 403. *See* TEX. R. EVID. 403. We affirm.

## I.    BACKGROUND

Appellant was indicted for continuous child sexual abuse against T.K.,[1] his niece. Appellant pleaded not guilty, and a jury trial commenced on October 21, 2024. After the jury was dismissed for the day, the trial court held a hearing on the admissibility of child pornography and erotica recovered in the investigation of appellant. The trial court, over the defense's objections, granted the State's request to admit all images and testimony related to the child pornography and erotica found on three cell phones.

The guilt-innocence phase of trial proceeded the next day. T.K.'s mother testified that the family lived at a house on Quail Creek in Victoria County from 2008 to 2014, and appellant lived with them for about a year or year and a half starting in 2011 or 2012. During this time, T.K. was about five or six years old. Appellant slept in the office, and T.K. slept on a bunk bed with her sister, C.K., in a separate bedroom. In 2014, when T.K. was about eight years old and C.K. was about seven years old, the family moved to a home in the Terra Vista residential community in Victoria County. T.K.'s father (and appellant's brother) testified that the family had to evacuate due to Hurricane Harvey in 2017 and briefly moved in with his mother in San Antonio. T.K.'s parents explained that their family was very close with appellant, and before T.K.'s outcry in 2023, T.K. and C.K. loved spending time with him. T.K.'s mother estimated appellant babysat the girls at his

---

[1] To protect the identity of the minor child, we refer to her and her family by their initials. *See* TEX. CONST. art. I, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process").

apartment or the Terra Vista residence about two or three times a week and occasionally on weekends.

In June 2023, when T.K. was sixteen, her mother discovered nude photographs of T.K. on T.K.'s cell phone and that T.K. had messaged "various boys" on Snapchat. She told T.K. that the boys "were probably grown men" and "predators." T.K.'s "body language proceeded to change," and her mother "asked if somebody had hurt her." T.K. "shook her head yes" and started to cry. T.K. identified appellant as the one who hurt her but did not disclose any details about the abuse. T.K.'s parents argued about how to move forward after her outcry. Eventually, in November 2023, T.K.'s father took her to the police department to make a statement. Both parents testified that C.K. never made an outcry of abuse or alleged that appellant sexually abused her.

T.K. was seventeen years old at the time of trial. She remembered appellant touching her once at the Quail Creek residence. She said appellant touched her chest and vagina under her clothes, and the touching occurred while she was in appellant's bed in the home office. At the Terra Vista residence, appellant touched her "chest," "butt," and "privates" "many times" during his visits, and the touching occurred primarily in her bedroom. On one occasion, appellant took her pants off and took pictures of her vagina. Appellant also touched her on at least one occasion at his apartment when she and her sister were spending the night. T.K. testified appellant came into the living room late at night and touched her butt and vagina while she was sleeping on the couch. Her sister was sleeping in the living room when this occurred. The last time appellant touched T.K. was at her grandmother's house in San Antonio when her family stayed there during Hurricane Harvey.

3

Forensic interviewer Michelle Rubio interviewed T.K. a few days after her outcry in November 2023. Rubio testified T.K. said "she was 5 or 6 years old" when appellant first "touched her under her clothes and her chest area." T.K. said appellant touched her chest and vagina under her clothes about five times at the Quail Creek residence, and the touching occurred in the office where appellant slept. At the Terra Vista residence, appellant "touched her chest over and under her clothes," and the touching occurred in her bedroom on her bunk bed while her sister was in the room. Appellant also "grabbed her hand and put it around . . . his penis" about five to ten times. At appellant's apartment, appellant "touched her chest, her abdominal area," and "on and around her privates with his hand" less than five times. The last touching occurred when T.K. was twelve years old at her grandmother's house in San Antonio. T.K. "described him touching her . . . on and around . . . her vagina, and also her chest and how he would caress her hair."

Sexual assault nurse examiner (SANE) Leslie Kallus examined T.K. on the same day as Rubio's interview. Her report, which included T.K.'s statement about the abuse, was admitted into evidence. In the report, T.K. said the abuse began when she was five or six years old while appellant was living with her family at the Quail Creek residence, and the last incident occurred when her family stayed in San Antonio "the week of [Hurricane] Harvey." She alleged that appellant touched her chest and vagina under and over her clothes. She stated appellant "would touch [her] vagina at first . . . on the outside, and then he would like go around (clarified as around the labia majora)." At the Terra Vista location, she said "his fingers went inside [her] vagina," he made her "touch his penis," he took photos her vagina, and "he put his mouth on [her] vagina."

4

Texas Ranger Brant Johnston and supporting officers executed a search warrant on appellant's residence on November 28, 2023.[2] Many children's figurines were found in the living room, a children's toy was found in the back bedroom, and the bathroom contained "Finding Nemo style bath mats, shower curtain, and sticker[s] on the cabinetry above the toilet." Based on his training "to recognize indicators of child abuse and exploitation," Johnston said the above findings were "potential indicator[s] of grooming" as appellant lived alone and had no children. Officers recovered a photo album in the dresser in appellant's bedroom which contained "28 printed photographs" of "5- to 6-year-old children" many of which were nude. Johnston was unable to identify the children depicted in the photographs in his investigation. In the same drawer, officers found "approximately 21 printed cards of partially nude [young] women."

Prior to appellant's arrest, Johnston interviewed appellant. Johnston's body camera footage of the interview was admitted into evidence, and a portion of the interview was played for the jury. In the video, Johnston explains "an individual made an outcry" against appellant, and he asks appellant if he knew who made the outcry. Appellant responds, "It is a girl named Ortega? Otherwise, I don't know."[3] Johnston then asks appellant if he is attracted to "girls younger than 18," and appellant responds, "I mean, like, [expletive] people now days, like, it's hard to [expletive] tell the [expletive] age anymore. But I'm not going to go out of my way chasing, like, after a [expletive] child."

Johnston also interviewed appellant after he was arrested and footage of the interrogation was admitted and played for the jury. In the video, appellant vigorously

---

[2] Johnston explained he was brought onto the case because T.K.'s father worked for the Victoria Police Department and it was "cleaner" to have a third party lead the investigation.

[3] Ortega was never identified as a complainant or witness in the investigation.

denies touching T.K. and states he did not know why she made the allegations against him. Johnston tells appellant that child pornography was found on his cell phones. At one point, appellant responds "looking is one thing" and denies touching any underage person. Johnston asks appellant what "age range" he is attracted to. Appellant responds, "Not five-year-olds." Johnston asks again, and appellant responds, "Honestly, . . . what you might find on my phone is that they are eighteen but they look younger. Like . . . sixteen or seventeen . . . . I'm not trying to look at toddlers or infants or some [expletive]." Johnston asks, "What about ten-year-olds?" Appellant responds, "No."

Victoria Police Department (VPD) Detective Wilmer McLeroy testified to the data extracted from four cell phones and one tablet recovered in the investigation of appellant. Out of the five devices, three of the cell phones contained child pornography or erotica. McLeroy explained child pornography generally "show[s] children engaging in intercourse" or "posed in sexual positions," while child erotica, which is legal in Texas, shows children "in little to no clothes" or "lingerie." In all, 203 images of "apparent and age difficult child pornography" and 155 images of child erotica were found across the phones. McLeroy explained "apparent" means the child is clearly prepubescent, "age difficult" means the child's age is "harder to identify" and may range anywhere from ten to seventeen years old, and "confirmed" is a child whose identity has been confirmed and is included in the National Center for Missing and Exploited Children (NCMEC) database. None of the images depicted T.K.

McLeroy sent the images to NCMEC to determine whether the children in the images could be identified and twelve were linked to actual victims. McLeroy read the image descriptions from NCMEC's report into evidence. Two images were part of the

6

same image series and were labeled child erotica, and ten images were part of a different image series and were labeled child pornography. As to the confirmed child pornography, the images generally showed a naked or partially naked "Caucasian female child" in sexual or sexually suggestive poses. During deliberations, the jury requested to view the twelve NCMEC images, and the request was granted.

Tiffany Lamb, appellant's ex-girlfriend, testified that she witnessed appellant with T.K. many times over the course of their eight-year relationship, and she never saw T.K. uncomfortable around appellant. Appellant also had a close relationship with her brother's three children who were seven to ten years old at the time of trial. Lamb's brother and sister-in-law testified that appellant had been around their children many times, and they loved appellant, and they never made an outcry against him. They also testified that appellant was their children's godfather, and despite the allegations against appellant, he was still their godfather. Larneisha Reed, appellant's last girlfriend, testified appellant was "[l]oving, generous, caring," and "[h]e would help anybody."

The jury found appellant guilty of the offense, and the trial court sentenced appellant to life imprisonment. This appeal ensued.

## II. DISCUSSION

Appellant argues the trial court abused its discretion by admitting evidence that appellant possessed child pornography because the probative value of the evidence was substantially outweighed by its prejudicial effect.

### A. Standard of Review & Applicable Law

"We review a trial court's ruling under Rule 403 of the Texas Rules of Evidence for an abuse of discretion." *Pawlak v. State*, 420 S.W.3d 807, 810 (Tex. Crim. App. 2013).

7

The trial court's ruling must be upheld as long as it is within the zone of reasonable disagreement. *Id.* (citing *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002)).

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. "Evidence is unfairly prejudicial when it has an undue tendency to suggest that a decision be made on an improper basis." *Pawlak*, 420 S.W.3d at 809 (citation modified). "Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g).

The factors considered in whether evidence is admissible under Rule 403 include, but are not limited to: "(1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence." *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012) (citing *Montgomery*, 810 S.W.2d at 389–90); *see Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

## B.      Analysis

Evidence that appellant possessed child pornography came in through Johnston's and McLeroy's testimony, and the twelve admitted images of child pornography and erotica. In this case, the probative value of such evidence was high. T.K. alleged that appellant abused her multiple times from when she was five or six years old to twelve years old. Appellant repeatedly denied the accusations and denied he had a sexual attraction to children. Evidence appellant possessed child pornography was probative of

8

appellant's intent to arouse or gratify his sexual desire, a required element of the offense. *See* TEX. PENAL CODE § 21.02(b), (c); *Sarabia v. State*, 227 S.W.3d 320, 324 (Tex. App.—Fort Worth 2007, pet. ref'd) (holding "two contact sheets, which depict[ed] underage boys engaged in sex" were admissible under Rule 403 in case for aggravated sexual assault of a child in part because the photographs tended to show appellant's "intent to arouse or gratify his sexual desire with underage boys"); *Cox v. State*, 495 S.W.3d 898, 904 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd); *see also Wooley v. State*, No. 05-09-00455-CR, 2010 WL 5395650, at *9 (Tex. App.—Dallas Dec. 30, 2010, no pet.) (not designated for publication) (concluding the complained-of evidence of child pornography "was probative because it tended to show appellant's intent to arouse or gratify his sexual desire"); *Dial v. State*, Nos. 05-09-00741-CR, 05-09-00742-CR, 2010 WL 4705529, at *5 (Tex. App.—Dallas Nov. 22, 2010, no pet.) (not designated for publication).

The State's need for the evidence was also high. In his interview with Johnston, appellant said he was only attracted to young women at or around the age of consent. Indeed, twenty-one printed images of young adult women were recovered in the search of appellant's apartment. Moreover, four witnesses testified appellant had great and loving relationships with T.K., her sister, and three other children who were the same age as T.K. was when she was allegedly assaulted. However, the extraction of his cell phones revealed 203 images of child pornography and 155 images of child erotica of "apparent and age difficult" children. The State's evidence helped rebut appellant's statements denying his attraction to prepubescent girls. *See Cox*, 495 S.W.3d at 904 ("For the charge of aggravated sexual assault, Appellant's main defense was that there was only [the complainant]'s word that he sexually assaulted her, while only [complainant] never acted

9

like she had been harmed and never withdrew from Appellant. Appellant's possession of pornography was some proof that he is sexually attracted to prepubescent girls."). Moreover, there were no witnesses to corroborate T.K.'s testimony of the abuse, no physical or DNA evidence, and the evidence at trial centered on T.K.'s credibility. *See Sarabia*, 227 S.W.3d at 324 ("[T]he force of the State's need for the evidence was significant because the State had nothing else (other than [the complainant]'s own testimony) with which to answer Appellant's attack on [the complainant]'s credibility; as the State observes, there was no DNA or other physical evidence showing that Appellant assaulted [the complainant]."); *see also Coburn v. State*, No. 05-17-00819-CR, 2018 WL 3424364, at *6–7 (Tex. App.—Dallas July 16, 2018, no pet.) (mem. op., not designated for publication) (holding evidence that appellant possessed video of child pornography, which was shown to the jury, was probative in child sexual assault case in part because "[t]he State's case consisted of [the complainant]'s testimony, her outcry to her mother, and her forensic interviews, as well as the testimony of a SANE nurse and a sex abuse therapist"; there was no "physical evidence of sexual assault or sexual contact," "no DNA evidence," and "no eyewitness"; and appellant attacked the complainant's credibility at trial); *Dial*, 2010 WL 4705529, at *5 (holding "the five pornographic images and the Google search screenshot were probative and necessary to show appellant's intent to arouse or gratify his sexual desire" in part because there were no eyewitnesses to the abuse, no physical evidence, and appellant attacked the complainant's credibility at trial); *cf. Pawlak*, 420 S.W.3d at 811 (holding the State's need for the extraneous-offense evidence was low in part because five complainants "testif[ied] about specific incidents of inappropriate sexual behavior, and the similarities in their stories were striking").

As to the potential to impress the jury, we first note that "sexually related bad acts and misconduct involving children are inherently inflammatory." *Pawlak*, 420 S.W.3d at 811. However, the State admitted only twelve of the 358 images at trial, and the jury charge included a limiting instruction on extraneous offense evidence. *See Cox*, 495 S.W.3d at 906 (holding that admission of "2,000 images and videos of child pornography possessed by [a]ppellant" in case involving aggravated sexual assault of a child did not violate Rule 403 in part because the State displayed only "some of the HTML pages containing the thumbnail images," "none of the images were displayed in their full size," "none of the videos were played," and "[t]he exhibit was not provided to the jury during its deliberations"); *see also Dial*, 2010 WL 4705529, at *5; *cf. Pawlak*, 420 S.W.3d at 811 (holding "the sheer volume of" 9,900 images and videos of child pornography was unfairly prejudicial in part because jury was granted access to all of it).

Further, the images showed nude or partially nude girls in sexual poses but did not show children engaging in sexual acts.[4] The images thus depicted acts that were less offensive than the acts appellant was accused of, which included penetrating T.K.'s vagina with his fingers, making her touch his penis, and touching his mouth to her vagina. *See Sarabia*, 227 S.W.3d at 324 ("While the photographs are repugnant, they had little potential to impress the jury in some irrational way; the activities depicted therein were close in kind to the activity for which Appellant was on trial, namely, orally and anally sodomizing a preteen boy, and Appellant's possession of the photos was less heinous than the evidence relating to the aggravated sexual assault itself."); *see also Wooley*, 2010 WL 5395650, at *9 (holding evidence of five images of child pornography in

---

[4] Appellant contends the twelve images showed "children engaging in various sexual acts, including sexual intercourse." Appellant points to nothing in the record to support this assertion.

appellant's possession "had little potential to impress the jury in some irrational and indelible way" because of the accused acts, namely, that appellant "sexually assault[ed] his seven or eight year old step-daughter").

As to the last factor, the State spent a fair amount of time developing the evidence during Johnston's and McLeroy's testimony, and the State brought up the child pornography evidence in its opening and closing statements. Nevertheless, nine other witnesses testified for the State and none of those witnesses discussed the recovered child pornography. And as discussed above, three of the four Rule 403 factors weigh in the State's favor. Accordingly, we hold the trial court did not abuse its discretion when it allowed the State to introduce the evidence that appellant possessed child pornography. *See Sarabia*, 227 S.W.3d at 325; *Cox*, 495 S.W.3d at 909; *see also Coburn*, 2018 WL 3424364, at *7; *Dial*, 2010 WL 4705529, at *5; *Wooley*, 2010 WL 5395650, at *10; *cf. Pawlak*, 420 S.W.3d at 811. We overrule appellant's sole issue.

### III.   CONCLUSION

The trial court's judgment is affirmed.

JON WEST
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
30th day of July, 2026.